**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| **Elias Salazar and Diane Rocha Salazar,** | § | **Case No. 05-95099** |
| Debtors. | § | **(Chapter 13)** |
| | § | |

## <u>MEMORANDUM OPINION</u>

The Salazars filed bankruptcy on November 1, 2005 without first obtaining credit counseling.  On November 2, 2005, the Salazars filed a motion seeking an extension of time by which they were required to obtain the credit counseling required by 11 U.S.C. § 109(h).  The Court denied this request by order on November 16, 2005 and struck the Salazars' petition.  *See In re Hubbard*, 333 B.R. 377 (Bankr. S.D. Tex. 2005).  The Salazars filed a motion to reconsider on December 3, 2005.  For the reasons set forth below, the motion to reconsider is denied.

### Summary

The Salazars filed a bankruptcy petition without obtaining pre-petition credit counseling. They acknowledge—as they must—that they were ineligible to be debtors without obtaining the counseling.   After the Salazars filed their petition, their home was foreclosed on under state law by Ameriquest Mortgage.  If the filing of the Salazars' petition invoked the automatic stay under § 362(a) of the Bankruptcy Code, then the foreclosure is voidable.  *In re Coho Resources, Inc.,* 345 F.3d 338 (5th Cir. 2003).  Accordingly, this decision will determine whether the Salazars are able to seek to void the foreclosure of their home.

The legal question is: Did Congress intend to impose an eligibility requirement on putative debtors, but also intend for an ineligible person to receive the benefits of the automatic stay?  The answer is: *It is implausible to believe that Congress specifically identified people to*

1

*exclude from the bankruptcy process, yet permitted those same people to benefit from*

*bankruptcy's most powerful protection: the automatic stay.*

Both logic and the statute dictate that no automatic stay arises on the filing of a petition

by an ineligible person.  Accordingly, the motion to reconsider is denied.

### Statutory Background

On October 17, 2005, most of the provisions of the Bankruptcy Abuse Prevention and

Consumer Protection Act of 2005 (BAPCPA) became effective.  Among those provisions is a

requirement in § 109(h) that a debtor obtain credit counseling:

> (1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

> (2)(A) Paragraph (1) shall not apply with respect to a debtor who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved nonprofit budget and credit counseling agencies for such district are not reasonably able to provide adequate services to the additional individuals who would otherwise seek credit counseling from such agencies by reason of the requirements of paragraph (1).

> (B) The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in subparagraph (A) shall review such determination not later than 1 year after the date of such determination, and not less frequently than annually thereafter. Notwithstanding the preceding sentence, a nonprofit budget and credit counseling agency may be disapproved by the United States trustee (or the bankruptcy administrator, if any) at any time.

> (3)(A) Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a debtor who submits to the court a certification that --

> (i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1);

(ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5-day period beginning on the date on which the debtor made that request; and

(iii) is satisfactory to the court.

(B) With respect to a debtor, an exemption under subparagraph (A) shall cease to apply to that debtor on the date on which the debtor meets the requirements of paragraph (1), but in no case may the exemption apply to that debtor after the date that is 30 days after the debtor files a petition, except that the court, for cause, may order an additional 15 days.

(4) The requirements of paragraph (1) shall not apply with respect to a debtor whom the court determines, after notice and hearing, is unable to complete those requirements because of incapacity, disability, or active military duty in a military combat zone. For the purposes of this paragraph, incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities; and "disability" means that the debtor is so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1).

11 U.S.C. § 109(h).

## Automatic Stay

### 1. Tracking the Statute

The Salazars' motion seeks reconsideration for the purpose of obtaining the benefits of the automatic stay. When the Court struck the Salazars' petition, it made clear that no case existed, and therefore no stay existed—not only after the Court struck the petition, but also between the time of filing and the striking. The automatic stay gives debtors "one of the most powerful weapons known to the law." *In re Russo*, 94 B.R. 127, 129 (Bankr. N.D. Ill. 1988).[1] Powerful legal weapons are subject to abuse, as will be discussed below.

---

[1] *See also* Robert Lefkowitz, *The Filing of a Bankruptcy Petition in Violation of 11 U.S.C. § 109(g): Does it Invoke the Automatic Stay?*, 26 CARDOZO L. REV. 297, 297 (2004).

To determine the automatic stay's application in this context, the Court must consider: (1) when the stay takes effect; (2) when is a petition filed under § 302[2]; and (3) who may be a debtor.

**(1)  When the stay takes effect.**  Section 362 governs the automatic stay.  Section 362(a) states that, with various exceptions, "a petition filed under section 301, 302, or 303 of this title…operates as a stay, applicable to all entities…."  11 U.S.C. § 362(a).  In a joint chapter 13 case like this one, the stay takes effect when a petition is filed under § 302.

**(2)  When a petition is filed under § 302.**  Section 302 states, in relevant part: "a joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter *by an individual that may be a debtor under such chapter* and such debtor's spouse."  11 U.S.C. § 302(a) (emphasis added).

**(3)  Who may be a debtor.**  Section 109 discusses who may be a debtor under the Code.  The subsection at issue—given the facts before the Court—is subsection (h)(1).  As set forth above, § 109(h)(1) states:

> (1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, *an individual may not be a debtor under this title unless* such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

11 U.S.C. § 109(h)(1) (emphasis added).  The remaining subsections of § 109(h) set forth exceptions to the credit counseling requirement.

---

[2]  This is a joint case, commenced under § 302.  Section 301 is the parallel provision for an individual case.

Consequently, when read together, §§ 109(h), 302, and 362(a) establish that no stay can exist for debtors who fail to obtain the required credit counseling or qualify under an exception. The syllogism is as follows:

- Individuals who have not received credit counseling and who do not qualify for a waiver are not eligible to be debtors under § 109.

- Only eligible individuals may file a petition under § 302.

- Without the filing of a petition under § 302, the automatic stay provisions set forth in § 362 are not invoked.

One commentator states this logic quite succinctly:

> Under § 362(a), the filing of a "petition" invokes the automatic stay…. According to § 301 [or § 302], a case commences under a particular chapter of the Bankruptcy Code when an entity that may be a debtor under such chapter files a petition….Section 109 lists who "may be a debtor" under the various chapters of the Bankruptcy Code….Only entities who meet the eligibility requirements of § 109 may "commence" a case. An entity that does not meet the eligibility requirements of § 109 may not be a debtor and thus cannot "commence" a case. Any document labeled "petition" filed by such an entity does not constitute a "petition" as defined by the Bankruptcy Code. The filing of that document does not constitute the filing of a "petition," preventing the automatic stay's invocation under § 362(a).

*The Filing of a Bankruptcy Petition in Violation of 11 U.S.C. § 109(g)*, *supra* note 1, at 315.

## 2. *Equity*

In coming to this conclusion the Court is mindful of potentially inequitable results for certain people who file bankruptcy without proper credit counseling. Nonetheless, given this Court's review of the relevant statutes, there is no room for an equitable exception to the application of the statute. *See In re Valdez*, 335 B.R. 801, 803 (Bankr. S.D. Fla. 2005) ("the Court may not modify statutory language based on sympathy and must enforce the plain unambiguous language of the statute"). Individuals filing bankruptcy either satisfy § 109(h) or they do not—this Court's view of the equity of the statute may not play a role in the Court's

decision.  The language of § 109(h) is unambiguous.  *See, e.g., In re Watson*, 332 B.R. 740, 745 (Bankr. E.D. Va. 2005); *In re Cleaver*, 333 B.R. 430, 433 (Bankr. S.D. Ohio 2005); *In re Hubbard*, 333 B.R. at 382.

Additionally, if the Debtors never satisfied § 302 , they failed to implement § 362(a)— and did not obtain a stay.  In determining that an ineligible debtor does not invoke the protections of the automatic stay, an element of uncertainty is infused into the world of consumer bankruptcy.  As one court stated:

> If every case is subject to being dismissed as void *ab initio* at a later time, creditors and other parties will face enormous uncertainty. They will not know whether a valid case exists without investigation. Even after review of the record reveals the absence of any proof of compliance with § 109(h), they still will not be sure that the debtor is ineligible, because the debtor may in fact have met the requirements but not perfected the record. Conversely, they will not know that the debtor is eligible even if the record on its face shows compliance with § 109(h); under the void *ab initio* result, the petition of an ineligible debtor must be stricken if the debtor in fact was not eligible but had erroneously shown that she was.

> Especially in a jurisdiction … with a high volume of individual filings, it is quite conceivable that administration of an individual's case might proceed despite § 109(h) ineligibility because the question does not immediately come to the attention of the court. If such a case is void *ab initio,* it arguably follows that any actions during the administration of the case are ineffective—by definition, there was and is no case.

> … And even if bankruptcy courts can fashion doctrines to avoid unfair results in such void *ab initio* situations, the fact remains that substantial uncertainty will cloud every transaction related to a bankruptcy case. At a minimum, a careful purchaser of assets will need to add investigation of an individual debtor's eligibility to its due diligence check list.

*In re Ross*, --- B.R. ---, 2006 WL 349654, at *5 (Bankr. N.D. Ga. Feb. 8, 2006) As indicated above, the automatic stay is a fundamental tenet of Title 11.  Legislative history indicates that Congress specifically intended for the automatic stay to be "one of the fundamental debtor

protections provided by the bankruptcy laws."  H.R. REP. No. 595, 95th Cong., 1st Sess. 340 (1977).  The Court therefore treads softly on the statutes governing the stay.

### 3.  Risk of Uncertainty

The Court is aware that the practical implications of this ruling are problematic in determining whether a stay exists.  It is true that an ineligible debtor is temporarily protected by a delay when a creditor chooses to wait for an eligibility determination before taking action that would otherwise violate a valid stay.  Without question, there would be more certainty without the ambiguity that exists in the gap between filing and the eligibility determination.  Creditors who act in the face of ambiguity may face repercussions if it is determined that they violated the automatic stay.  *See In re Rios*, 336 B.R. 177, 180 n.2 (Bankr. S.D.N.Y. 2005).  The law contains both mechanisms to handle violations of a valid stay, and mechanisms to punish ineligible debtors who file to wrongfully seek shelter under the automatic stay provisions.

Nevertheless, the Court is unaware of any reason that precludes Congress from creating a level of uncertainty pending a final determination by the Court.  One need not look far for examples of where Congress has determined that uncertainty—that produces a chosen outcome—is better than certainty that produces an undesirable outcome.  Actions taken in violation of the automatic stay are sometimes void.  Other times, the automatic stay is retroactively annulled in order to validate the conduct.  As the Fifth Circuit has written:

> Courts disagree, however, as to the effect of violations of this automatic stay. Some courts hold that acts in violation of the stay are void *ab initio* and incurable. We adhere to the view that violations are merely "voidable' and are subject to discretionary "cure."  This position rests on the bankruptcy court's statutory power to annul the automatic stay, i.e., to "lift the automatic stay retroactively and thereby validate actions which otherwise would be void."

*In re Coho Res., Inc.*, 345 F.3d at 344.

7

By allowing actions taken in violation of the stay to be annulled, Congress chose to allow those actions to be subject to uncertainty until a final decision is reached.

Other examples abound.  Title to real estate—normally discernable by a review of real property records—may be subsumed to adverse possession. *Bernal v. Chavez,* --- S.W.3d ----, 2006 WL 304524 (Tex. App.—El Paso Feb. 9, 2006).  The United States may claim an unrecorded, inchoate tax lien on after-acquired property for unpaid federal income taxes—a lien that takes priority in after-acquired property over liens filed before the filing of the government's lien.  *U.S. v. McDermot,* 507 U.S. 447, 113 S.Ct. 1526 (1993).  The automatic stay is not applicable to actions by a governmental unit to enforce its police powers—but the decision on the applicability of the stay can be one that requires a court decision.  *See In re Gandy,* 327 B.R. 796 (Bankr. S.D. Tex 2005).

Another area of uncertainty in bankruptcy cases is the area of preferences and fraudulent transfers.  Section 547 governs preferences under the Code.  Pursuant to § 547(b), a trustee may avoid certain transfers made within 90 days before the filing date, and other transfers made up to one year before the filing date.  11 U.S.C. § 547(b).  By way of example, a debtor may transfer a tract of land to satisfy a pre-existing obligation.  Title passes at the moment of transfer.  The creditor believes the transfer is proper and begins to plan development of the real estate.  Two months later, the debtor files bankruptcy.  That debtor, whether through a trustee or as a debtor-in-possession, may be able to avoid the property transfer made two months prior to filing and "may recover, for the benefit of the estate, the property transferred…."  11 U.S.C. § 550(a).  Clearly, no commercial certainty is promoted through such a statutory avoidance power.  Similar results may be obtained under §§ 544 and 548.  In providing for these provisions, Congress

chose to promote a social policy (the equitable distribution of estate assets) even at the cost of uncertainty.

More specifically related to the automatic stay, the Bankruptcy Code has seen the continual expansion of § 362(b) over the decades. Section 362(b) enumerates specific acts that are not stayed even when valid petitions are filed under §§ 301, 302 or 303. When the Bankruptcy Code took effect in 1978, § 362(b) only contained seven types of actions not stayed under § 362(a). *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598 (1978) (superseded by 11 U.S.C § 362(b) (2005)). The seven circumstances involved relatively basic and straight-forward actions such as criminal actions or proceedings, collection of alimony, or actions to enforce a government's police or regulatory powers. By 1990, § 362(b) had expanded to double its original size, at that point containing 14 exceptions to the automatic stay. The exceptions continued expanding to 18 enumerated exceptions by the end of 1994. Finally, today, there are 28 exceptions after the adoption of BAPCPA.

Such a proliferation of exceptions to the automatic stay further indicates Congressional intent to promote specific policies (e.g. a spouse seeking to obtain or enforce a domestic support obligation[3] should not have to get an order lifting the stay to proceed) over a broad and clear policy that filing a bankruptcy petition stays all actions. Indeed, creditors today can pursue 28 different types of actions without concern for violating the stay. Thus, the Court must enforce Congress' intent to effectuate policies outlined in the Code rather than preserve the broader—and more "automatic"—stay that was enacted under the 1978 law.

In other words, the Court sees no reason why certainty must trump policy. Congress has decided to establish new eligibility requirements under BAPCPA. If this Court were to determine that certainty overrides that intent, the Court would be reaching a decision that

---

[3] *See* 11 U.S.C. §§ 101(14A) and 362(b)(2).

Congress was not free to change the paradigms under which bankruptcy law operates.  The Court declines to make such a decision.  Certainty versus policy is a decision that balances social policy with economics.  A decision with respect to such matters is left to Congress alone.

### 4.  Congressional Intent

The Court's reading of § 109(h) and the result of a debtor's failure to comply with the relevant statutes (e.g. the absence of a stay) effectuates Congressional intent.   In drafting § 109(h), Congress intended to make certain people ineligible to file bankruptcy.  This intention is undisputed by the Debtors here and in every published opinion concerning § 109(h).[4]   In considering the automatic stay in this context, the Court must then ask: Did Congress intend to give ineligible debtors the benefits of the stay if they file bankruptcy?  To ask is to answer: *It is implausible to believe that Congress specifically identified people to exclude from the bankruptcy process, yet permitted those same people to benefit from bankruptcy's most powerful protection: the automatic stay.*

---

[4] *See In re Hubbard*, 333 B.R. 377, 386 n.2 (Bankr. S.D. Tex. 2005) (stating that "to allow an individual to wait to request credit counseling until after becoming a debtor would be demonstrably at odds with the intent of Congress"); *In re Sukmungsa*, 333 B.R. 875, 876 (Bankr. D. Utah 2005) (stating that "compliance with § 109(h) is an eligibility bar that must be hurdled before an individual may obtain title 11 relief"); *In re Cleaver*, 333 B.R. 430, 433 (Bankr. S.D. Ohio 2005) (stating that "the essential import of [§ 109(h)] is quite clear"); *In re LaPorta*, 332 B.R. 879, 883 (Bankr. D. Minn. 2005) (stating that "Congress…made its intent crystal-clear via an express prohibition: an individual who does not satisfy these prescriptions 'may not be a debtor'"); *In re Dixon*, --- B.R. ---, 2006 WL 355332, at *2 (8th Cir. BAP Mo. Feb. 17, 2006) (stating "[i]t is the clear expectation of the [§109(h)] that all individual debtors receive such a [credit counseling] briefing *prior* to filing"); *In re Mingueta*, --- B.R. ---, 2006 WL 337542, at *3 (Bankr. C.D. Cal. 2006) (stating that "§ 109(h)'s mandate is unambiguous and must be strictly enforced"); *In re Rios*, 336 B.R. 177, 179 (Bankr. S.D.N.Y. 2005) (stating that "[u]nder BAPCPA, Congressional intent is clear that credit counseling is required *prior* to filing, as a prerequisite for bankruptcy relief"); *In re Rodriguez*, 336 B.R. 462, 477 (Bankr. D. Idaho 2005) (stating that "the evident Congressional intent [is] that almost all individuals must undergo the [credit] counseling before, and as a precondition to, filing bankruptcy"); *In re Tomco*, --- B.R. ---, 2006 WL 459347, at *4 (Bankr. W.D. Pa. Feb. 27, 2006) (stating that "[u]nder the new statutory regime, putative debtors are now forced to seek alternative methods of dealing with their financial problems prior to filing for bankruptcy protection"); *In re Wallace*, --- B.R. ---, 2006 WL 581036, at *2 (Bankr. E.D. Ark. Mar. 9, 2006) (stating "Congress has made credit counseling a requirement to filing a petition in bankruptcy, and unless a debtor satisfies the requirement or qualifies for an exception, he or she is not eligible to be a debtor…"); *In re Petit-Louis*, --- B.R. ---, 2006 WL 538635, at *2 (Bankr. S.D. Fla. Mar. 1, 2006) (stating that "credit counseling is a new provision and it is provided for a particular purpose…"); *In re DiPinto*, 336 B.R. 693, 695 (Bankr. E.D. Pa. 2006) (stating "[§109(h)] has been described as a 'first level requirement for someone seeking bankruptcy relief'"); *In re Anderson*, 2006 WL 314539, at *1 (Bankr. N.D. Iowa Feb. 6, 2006) (stating "the [§109(h)] certification must be made by a filing debtor") (citing *id.*).

A review of the specific legislative history surrounding BAPCPA supports this view. The relevant history indicates that debtors were to "receive credit counseling before they can be eligible for bankruptcy relief so that they will make an informed choice about bankruptcy, its alternatives, and consequences." H.R. REP. 109-31(I), at 104 (2005). Congress intended to give potential filers "an opportunity to learn about the consequences of bankruptcy…before they decide to file for bankruptcy relief." *Id*. Congressional intent is defied when an ineligible debtor is nevertheless given bankruptcy protections with the automatic stay.

Section 521, as amended, is telling. Congress amended § 521 to include a list of matters that would render a case so deficient that the case would be "automatically" dismissed. 11 U.S.C. § 521(i). This list includes a requirement that the debtor file the required schedules of assets and liabilities, the statement of financial affairs and a certificate that the debtor has been informed of various bankruptcy alternatives. *See* 11 U.S.C. § 521(a)(1). Notably, the debtor is required to file a certificate of credit counseling under § 521(b)(1), but the failure to file the certificate is not itself a basis for automatic dismissal of the case. Chapter 13 cases are also subject to discretionary dismissal under § 1307(c)—however the failure to obtain credit counseling is noticeably absent from the list of matters that could give rise to a discretionary dismissal. Accordingly, although there are lengthy and detailed provisions providing for the involuntary dismissal of a chapter 13 case, Congress did not provide for dismissal when a debtor was not eligible to file in the first place.

By *not* providing that a filing would be dismissed for failure to obtain credit counseling, either Congress regarded the credit counseling as less important than other matters that would result in a dismissal or Congress intended that there would be no case to dismiss. The first interpretation is implausible. It is not more important to file the credit counseling certificate than

to obtain the credit counseling itself.  *See* 11 U.S.C. § 521(b)(1).  Moreover, the intentional inclusion of credit counseling as an eligibility requirement rather than merely an additional obligation of a debtor under § 521 evidences the importance of credit counseling.  Since failure to obtain credit counseling is not a basis for dismissal, the only alternative is to find that no case was commenced by the filing of a petition by an ineligible person.

### 5.   *Surplusage and Pre-BAPCPA Jurisprudence*

Some language added under BAPCPA could lead to an alternative interpretation from that asserted here.  As the Debtors point out, § 362(b)(21) states, in relevant part, that the filing of a petition does not operate as a stay "under subsection (a), of any act to enforce a lien against or security interest in real property…if the debtor is ineligible under section 109(g) to be a debtor in a case under this title…."  A stay only operates under § 362(a) when a petition is filed under §§ 301, 302 or 303, and a petition can only be filed under one of those sections by an eligible debtor under § 109.  The Court's above discussion on § 109(h) could be equally relevant under § 109(g).  An ineligible debtor under § 109(g) never receives the protections of the stay under § 362(a).

The Debtors contend that § 362(b)(21) would be surplusage if the automatic stay did not arise on the filing of a petition by ineligible debtors.  In other words, if an ineligible debtor under § 109(g) never receives the protections of § 362(a), it is entirely unnecessary to specify the particular times the stay does not apply in the language of § 362(b)(21).  The Debtors argue that § 362(b)(21) is therefore evidence that the filing of a petition by an ineligible debtor under § 109 does provide a stay unless specifically noted otherwise—such as by § 362(b)(21).  This reading of § 362 implies that a stay takes effect upon the filing of any document calling itself a petition (without regard to eligibility), and that § 362(b) provides the exclusive list of exceptions from the

stay.  As one court stated, "[a]bsent from this decidedly exhaustive list is the failure of a debtor to qualify under the particular chapter in which the debtor files for bankruptcy."  *Shaw v. Ehrlich*, 294 B.R. 260, 266 (W.D. Va. 2003).

A variety of courts have considered the interplay between §§ 109(g) and 301.  Section 109(g) states:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> (1)   the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2)   the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g).  Thus, if a person filing bankruptcy falls within either § 109(g)(1) or (2), he is ineligible to be a debtor, and therefore cannot commence a case under §§ 301 or 302.  The Court must examine this apparent surplusage in historical terms—prior to the addition of both §§ 109(h) and 362(b)(21) under BAPCPA.  Prior to the adoption of § 362(b)(21), not all courts considering the interplay between §§ 109(g) and 301 agreed on the effect of ineligibility under § 109(g).

Some courts concluded that the filing becomes void *ab initio*, and therefore no stay ever existed.  *See, e.g., In re McKay*, 268 B.R. 908, 912 (Bankr. W.D. Va. 2001) ("an entity, ineligible to file under § 109(g), cannot commence a voluntary case … nor can the entity avail itself of the protections provided by … the automatic stay); *In re Hollberg*, 208 B.R. 755, 756 (Bankr. D. D.C. 1997) ("[invalid] 'petition' does not give rise to an automatic stay"); *In re Prud'Homme*, 161 B.R. 747, 751 (Bankr. E.D.N.Y. 1993) (if clearly ineligible under § 109(g),

filing is void *ab initio* and no stay can be addressed by the court); *In re Walker*, 171 B.R. 197, 202 (Bankr. E.D. Pa. 1994); *In re Miller*, 143 B.R. 815, 820 (Bankr. W.D. Pa. 1992) ("[a] debtor who files … in violation of 11 U.S.C. [§] 109(g)(1) has no … automatic stay"); *In re Pelletier*, 2000 WL 33673780 (Bankr. M.D.N.C. Sept. 7, 2000) ("[s]ince the debtor is not an eligible debtor under the Bankruptcy Code, the filing of this petition did not initiate the operation of the stay…").

Other courts found that the stay takes hold upon filing the petition, and that a later finding of ineligibility under § 109(g) does not nullify the stay up until that point. *See, e.g., In re Flores*, 291 B.R. 44, 51 (Bankr. S.D.N.Y. 2003) (filing in violation of § 109(g) does not render filing void *ab initio*); *In re Fischer*, 136 B.R. 819 (D. Alaska 1992) (filing a petition automatically stays all actions); *Carr v. Sec. Sav. & Loan Ass'n*, 130 B.R. 434 (D.N.J. 1991); *In re Pappalardo*, 109 B.R. 622 (Bankr. S.D.N.Y. 1990).

The Court concludes that Congress adopted § 362(b)(21) with the apparent intent to legislatively overrule courts that were misapplying the statute as written.  Although the Court's interpretation would have made § 362(b)(21) surplusage in the statute had there not been contradictory court rulings, the Court will not ignore the reality of the interplay between case law and the legislative process.  Moreover, even if the language were treated as surplusage, the Court should not give meaning to surplusage if doing so would be demonstrably at odds with legislative intent.  *Lamie v. U.S. Trustee,* 540 U.S. 526, 536 (2004).  In this case, the apparent legislative intent was to overrule court decisions that were at odds with the statute as previously drafted.  Accordingly, § 362(b)(21) was not surplusage—it implemented a  legislative intent to eliminate any court-perceived ambiguity.

The Debtors also argue that the Court should consider the recently added § 109(h) under the pre-BAPCPA jurisprudence established with respect to § 109(g).  Yet, as set forth above, courts considering § 109(g) disagreed on whether a stay existed between the time of filing and an eligibility determination under § 109(g).  Thus, regardless of one's view on § 109(h), § 109(g)'s treatment in case law cannot be entirely instructive.

The Salazars argue that courts that annulled the stay under § 109(g) did so in reaction to debtor abuse.  The Salazars want the Court to create a "good faith" exception to the general rule denying ineligible debtors the benefits of the automatic stay.  Because § 109(g)(1) specifically refers to bad faith filings, while § 109(h) does not discuss bad faith filings, the Salazars argue that denying them the benefits of the automatic stay would be "punishment" as if they had violated a § 109(g) dismissal order.  The Salazars miss the issue.  Denial of the benefit of the automatic stay is not a punishment.  Section 109 does not directly determine who is entitled to the protections of the automatic stay.  Section 362 governs the imposition and extent of the stay.  As discussed above, § 362(a) requires that a petition be filed under §§ 301, 302, or 303.  Debtors ineligible to file bankruptcy under § 109 (it is not relevant whether the ineligibility arises under subsection (g) or (h)) are not eligible to file a petition under § 302(a).  No showing of abuse is necessary under § 109(h).  The statute is not ambiguous; the Salazar's alleged good faith creates no exception.

### Striking v. Dismissing

The Debtors imply that the Court has "chosen" to strike the petition and annul the stay.  Rather, the petition is "stricken" because an ineligible debtor can file a petition with the clerk,[5]

---

[5] The clerk, of course, accepts papers that are presented without a merits review.  The Debtors' argument would allow an individual to title any piece of paper a "petition" and to give it the same legal significance as one filed in accordance with § 302.  To accept that argument is to invite havoc.  What if the document was filed fraudulently?  What if the text of the document indicated that the "petition" was a "petition for a grievance" against some unjust

but that act alone does not invoke the automatic stay.  Regardless of what terminology is used—strike, dismiss, etc.—no stay arose if the petition did not satisfy §§ 301, 302 or 303.  As the Debtors cannot satisfy any of these three sections, the Debtors cannot claim to ever have invoked the automatic stay.  Therefore, the Court can not need annul the stay, as no stay existed.

In denying this motion to reconsider, the Court upholds its previous ruling striking the Salazars' petition.  The Court will evaluate the appropriate terminology.  There is a difference between a bankruptcy *case* and a bankruptcy *petition*.  Certain language in the Code does suggest that "dismissal" is the proper word or action, but for the *petition*, not the *case*.  Section 921(c) and (d) use the phrase "dismiss the petition."  11 U.S.C. § 921(c) and (d).  To the extent that dismissing a petition strikes the petition, the two actions are identical.  Both terms evidence an intent to rule that the petition filed never commenced a bankruptcy case.  In chapter 9, it is clear what terminology to employ.  In chapters 7, 11 and 13, it is not.

Indeed, this Court did specifically "strike" the petition in *In re Hubbard*, 333 B.R. at 288.  Nonetheless, whether a petition is "dismissed" or "stricken" for failure to comply with § 109(h) carries the same consequences regardless of semantics.  A *case* "dismissed" under a provision such as § 707 brings a different result than a *petition* "dismissed" under § 109.  *See In re Rios*, 336 B.R. 177, 180 (Bankr. S.D.N.Y. 2005).  Dismissal of a petition amounts to dismissal of a "case" prior to the case's commencement.  As such, a petition dismissed under § 109 would not create a case "pending within the preceding 1-year period" under § 362(c)(3) and (4).

---

act by the government, mistakenly filed with the bankruptcy clerk?  Section 302 defines a petition as a "petition *under such chapter by an individual that may be a debtor under such chapter.*"  11 U.S.C. § 302(a) (emphasis added).  Section 101(42) defines a petition as a "petition filed under section 301, 203, 303, or 304 of this title, as the case may be, commencing a case under this title.  11 U.S.C. § 101(42).  To attribute legal significance to misnomered documents (i.e., those filed *not* by someone eligible to be a debtor) is to remove the meaning of the statute.

Understandably, courts have not always chosen their wording in this context with precision.  Prior to BAPCPA's enactment, the question of whether to dismiss a case or strike a petition was a difference without a distinction.  It rarely mattered whether an individual's petition in his last case had been "stricken" thereby rendering the current case his first (or second, and so on), or whether it was "dismissed" thereby rendering his current case the second (or third, and so on).  Following the adoption of BAPCPA, the distinction has meaningful consequences under § 362(c)(3) and (4).  Thus, striking a petition today—with the intention that its filing never commenced a case—is significant when applying § 362(c)(3) and (4).  Section 362(c)(3) terminates the automatic stay in a second case pending within the previous year.  A debtor must then prove that he is entitled to an extension of the stay.  *See, e.g., In re Rios*, 336 B.R. 177, 179-80 (Bankr. S.D.N.Y. 2005).  If the debtor had two or more cases pending within the previous year, the new "case" would render an even harsher result under § 362(c)(4), with no stay at all unless the debtor proves entitlement to a stay.  *See, e.g., In re Toro-Arcila*, 334 B.R. 224 (Bankr. S.D. Tex. 2005).

Nonetheless, the consumer bankruptcy paradigm has changed.  In truth, § 109(g) has always left the possibility of a gray area when a creditor is unsure of a filer's eligibility prior to a court's determination.  *See In re Flores*, 291 B.R. 44.  However, in practice, § 109(g) and similar subsections of § 109 only impacted discrete groups of filers.  Section 109(g) is entirely inapplicable to any first-time filers—and therefore to the vast majority of filers.  Section 109(h), however, applies to all individuals filing bankruptcy.  The chapter filed is irrelevant, the number of past filings is irrelevant, and the amount of debt scheduled is irrelevant.  BAPCPA's addition of § 109(h) adds an initial question to *every* individual filing: has the debtor obtained credit counseling or qualified under an exception?

Because the Court sees no distinction between "dismissing the petition" (as described in chapter 9) and "striking the petition" (as described in the order pending reconsideration), the Court declines to modify its order for any semantic reasoning.

### Additional Arguments Raised in Motion to Reconsider

The Debtors' motion to reconsider raises additional arguments separate from the Code sections discussed above. The Court separately addresses those arguments now.

The Debtors seek a new trial by claiming "unfair surprise" regarding the Court's original hearing on November 16, 2005. Debtor's counsel claims that he believed the Court planned to hold a status conference rather than a substantive hearing. The Court rejects counsel's unfair surprise argument. The order setting the November 16, 2005 hearing did not simply set a status hearing. Rather, the six-page order begins by stating that the Court "sets a hearing to consider the applications filed…." A hearing to consider the applications is clearly a substantive hearing, not a scheduling conference. Further, the order stated that "the United States trustee shall appear and describe the procedures that have been undertaken by the United States trustee with respect to the United States trustee's certification obligations under the statute." Arguments of this sort are clearly substantive. The Court finds that counsel's unfair surprise argument lacks merit.

The Salazars further argue that the Court was improper in utilizing 28 U.S.C. § 1746—a section with which the Debtors were unfamiliar —as a reason why the Debtors' initial certification may not be sufficient. Section 1746 delineates the requirements for a certification under any statute of the United States. The Debtors were informed of this section and its requirements prior to any dismissal by the Court. They were given the opportunity to file an amended certification, but failed to do so. Consequently, the argument carries no weight.

To the extent that any additional relief is requested, it is denied.

**Direct Appeal to Fifth Circuit**

Pursuant to 28 U.S.C. § 158(d)(2), the Court certifies this decision for direct appeal to the United States Court of Appeals for the Fifth Circuit.  Based on a review of case law in this and other jurisdictions, as well as a consideration of the importance of this matter for many consumer debtors and their creditors, the Court believes that direct appeal of the present order is appropriate under § 158(d)(2)(A)(i):

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance.

28 U.S.C. § 158(d)(2)(A)(i); *see also In re Virissimo*, 332 B.R. 208 (Bankr. D. Nev. 2005). Section 158(d)(2)(B)(i) permits a bankruptcy court to certify an appeal to the court of appeals on its own initiative.  Further, as provided for under the statute, "[t]he parties may supplement the certification with a short statement of the basis for the certification."  28 U.S.C. § 158(d)(2)(C). Should a party want to supplement the certification, that supplement shall be submitted with the notice of appeal.  As the court in *Virissimo* points out, the present certification in no way alters a party's ordinary requirements in filing a notice of appeal.  *Id.* at 209 n.1.

**Conclusion**

The Court has carefully considered the arguments set forth in the Debtors' motion to reconsider, as well as cases issued on this topic since the motion was filed.  While the Court maintains its original view, it does so cautiously given the consequences for these Debtors. Statutory analysis aside, the Debtors lose their homestead under the present ruling.  The Fifth Circuit has held that a debtor's home is an asset deserving special attention and protections.  *See, e.g., In re Osborne*, 379 F.3d 277, 284 (5th Cir. 2004).  Nonetheless, the relevant statutory language leaves no room for discretion.

The motion for reconsideration is denied.  No automatic stay arose in this case.

Signed at Houston, Texas on March 29, 2006.

MARVIN ISGUR
United States Bankruptcy Judge